UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHLEEN FREDERICKS, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Civil Action No. 3:23-CV-1757-X |
| AMERIFLIGHT, LLC, | § § § | |
| *Defendant.* | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pilot Kathleen Fredericks agreed to work for Ameriflight, LLC (Ameriflight) and repay training costs if she left before a predetermined time. She left early, began making payments, and then brought four claims against Ameriflight. Ameriflight moved to dismiss (Doc. 66). For the reasons discussed below, the Court **DENIES** the motion.

### I. Factual Background

Ameriflight is a charter airline operator governed by 14 C.F.R. Part 135. Part 135 requires governed airlines to submit pilot training plans to the Federal Aviation Administration, and the training that pilots receive is not transferrable to another airline. Thus, Fredericks argues the training program primarily benefits Ameriflight, not its pilots. From 2020 until 2022, Ameriflight required new pilots to reimburse Ameriflight between $20,000 and $30,000 if the pilot resigned or was terminated for cause within a certain time range of revenue flying for Ameriflight.

Fredericks accepted an offer from Ameriflight in April 2021 and began working for it in May 2021. To accept Ameriflight's offer, Fredericks signed an employment agreement saying Ameriflight would train Fredericks, but that if she left before completing 12 months of revenue flying, Fredericks must repay Ameriflight $20,000. Fredericks finished her training by July 2021, when her salary became $55,000. Fredericks resigned in November 2021. Ameriflight paid her $2,500 for her last full (two-week) pay period and $1,300 for her last full work week. Fredericks and Ameriflight agreed for her to make monthly payments toward the $20,000 training repayment cost, and Fredericks made $3,250 in payments from January 2022 until filing this suit in January 2023.[1]

Fredericks's suit brought claims for: (1) illegal kickbacks under the Fair Labor Standards Act; (2) unpaid wages under the Fair Labor Standards Act; (3) an unlawful contract in restraint of trade; and (4) a declaration and injunction that the training repayment is an unenforceable penalty. Fredericks alleges the training costed Ameriflight substantially less than $20,000. Then Ameriflight moved to dismiss, arguing Fredericks's claims lack merit and the Court lacks jurisdiction.

## II. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss a case for lack of subject-matter jurisdiction.[2] "When a Rule 12(b)(1) motion to dismiss is filed in conjunction with other Rule 12 motions, the court should consider the Rule

---

[1] The parties agreed to pause the payments during this litigation.

[2] FED. R. CIV. P. 12(b)(1).

2

12(b)(1) jurisdictional attack before addressing any attack on the merits."[3]  This is so because it prevents a court without jurisdiction from prematurely dismissing a plaintiff's claim with prejudice.[4]  A court may find lack of subject-matter jurisdiction in any of three instances: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[5]  The party asserting jurisdiction bears the burden of proof to establish that subject-matter jurisdiction exists.[6]

A federal court's Article III jurisdiction is limited to "Cases" and "Controversies."[7]  The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.[8]  Standing includes three elements.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[9]

---

[3] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] U.S. Const. art. III, § 1.

[8] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[9] *Id.* at 560–61 (quotation marks removed).

Similarly, the doctrine of ripeness is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[10] Determining whether an issue is ripe for adjudication requires the court to evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."[11]  "A claim is not ripe for adjudication if it [or a purported injury] rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[12]

And Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a claim that's not plausibly alleged.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[13]  A claim is plausible when it "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[14] which requires "more than a sheer possibility that [the] defendant has acted unlawfully."[15]  "[A] formulaic recitation of the elements of a cause of action will not do."[16]  And the pleading must offer "more than an unadorned, the-defendant-unlawfully-harmed-me

---

[10] *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).

[11] *Nat'l Park Hosp. Ass'n v. Dept. of Interior*, 538 U.S. 803, 808 (2003).

[12] *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up).

[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Id.*

[16] *Id.* (cleaned up).

accusation."[17]  The court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[18]

### III. Analysis

#### A.    Jurisdictional Arguments

Ameriflight raises its jurisdictional (Rule 12(b)(1)) arguments as an alternative to its merits (Rule (12)(b)(6)) arguments.  But the Court is not at liberty to address the merits first.  If the Court has no jurisdiction (the power to hear the case), then the Court has no power to reach the merits.  As such, the Court addresses the jurisdictional argument first.

Ameriflight's jurisdictional argument goes to the claim for a declaration and injunction that the training repayment is an unenforceable penalty (and disgorgement of the amount she has already paid).  Ameriflight contends that this claim is unripe because the following conditions would have to ripen it: (1) Frederick stops making payments, (2) Ameriflight sues, and (3) Frederick argues in that suit that $20,000 was more than the cost of training.  Fredericks responds such a declaration wouldn't be advisory because she has already begun making the payments.

The Court agrees with Frederick.  True, the Texas and federal declaratory judgment acts don't call for purely advisory opinions.  The courts can't be everyone's general counsel.  But those laws do invert the order of the parties with the race to the

---

[17] *Id.*

[18] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (cleaned up).

courthouse.  So the defendant who fears a plaintiff's claims rushes to sue the plaintiff to declare their respective rights and obligations.  Here, Frederick began making the payments she claims are unlawful.  Sure, she could have refrained from paying, prompted Ameriflight to sue, and raised the defense of an unlawful penalty.  But the declaratory judgment acts allow her to race to the courthouse to sue first to declare the parties' rights and duties.  Her claim for a declaratory judgment is therefore ripe, and the Court denies Ameriflight's motion to dismiss that claim due to lack of subject-matter jurisdiction.

### B.      Merits Arguments

Ameriflight also argues for dismissal of all four claims on the merits.  The Court takes each claim in turn.

### 1. FLSA Claims

As to the two Fair Labor Standards Act claims, Ameriflight argues that caselaw shows that training reimbursement is a loan program, and Ameriflight's actions in seeking recoupment as a normal creditor do not violate the law.  Fredericks responds that the training was primarily for Ameriflight's benefit (and thus an improper kickback), and the Ameriflight demand to pay back the training was a de facto deduction from Frederick's paycheck, in violation of the FLSA minimum wage provision.

The Court agrees with Fredericks.  As best as the Court can tell, here's how the FLSA handles kickbacks.  First, the FLSA guarantees minimum wages and overtime pay.  Next, the FLSA has a process for counting in those wages the

"reasonable cost . . . to the employer of furnishing such employee with board, lodging, *or other facilities*[.]"[19]  But the term "other facilities . . . must be something like board or lodging."[20]  So the regs say the test is whether the "other facilities" are "primarily for the benefit or convenience of the employer."[21]  If so, those extra wages in the form of "other facilities" "will not be recognized as reasonable and may not therefore be included in computing wages."[22]  As illustrations, the regs give examples of facilities primarily for employer benefit as company protection, uniform rental, and medical services covered by state workers compensation laws.[23]  Because those "facilities" primarily benefit the employer, the employer cannot route those costs through paychecks that are below minimum wage to claim the employer is actually paying minimum wage.[24]  By contrast, other "facilities" that could primarily benefit employees are meals, lodging, and transportation to and from home when that time is not compensated.[25]  These payments are really for the employee, not the employer, so the employer can count them as wages to get up to the level needed for minimum wages.

---

[19] 29 C.F.R. § 203(m) (emphasis added).

[20] 29 C.F.R. § 531.32(a).  This principle is called "ejusdem generis."  A catch-all phrase at the end of the list must be read in conjunction with the preceding items in the list.  Way to go on textualism, Department of Labor!!!

[21] 29 C.F.R. § 531.32(c).

[22] 29 C.F.R. § 531.32(c).

[23] 29 C.F.R. § 531.32(c).

[24] 29 C.F.R. § 531.32(c).

[25] 29 C.F.R. § 531.32(a).

Three lingering issues in the framework remain that relate to Fredericks's FLSA claims. The first is that wages must be final and unconditional (or "free and clear").[26] The idea here is that if wages are above minimum but contingent on the employee buying tools that are required for work, then the wages after factoring those tool costs in could fall below minimum wages for a pay period—which would violate the FLSA.[27] The second lingering issue is the structure of the condition or kickback. The FLSA is not regimented here, instead defining a kickback as the employee providing a benefit to "the employer or to another person for the employer's benefit," a benefit that is either direct or indirect.[28] So paying an employer cash is direct, or driving a personal car on the job to benefit the employer is indirect. The third lingering issue is timing. The FLSA does not define a kickback or "other facilities" as a deduction from pay. Rather, it leaves timing as a fluid analysis, deferring to the statute of limitations to handle timing issues.

While there are no Fifth Circuit cases on point, the Ninth and Seventh Circuit cases are helpful. In *Heder v. City of Two Rivers, Wisconsin*, the Seventh Circuit examined a city program for training firefighters to be paramedics that required that "any firefighter leaving the City's employ within the next three years [to] reimburse the City for the cost of the training, which would give each firefighter a portable credential."[29] The lead plaintiff firefighter quit after two years, and the city withheld

---

[26] 29 C.F.R. § 531.35.

[27] 29 C.F.R. § 531.35.

[28] 29 C.F.R. § 531.35.

[29] 295 F.3d 777, 778 (7th Cir. 2002).

all of the plaintiff's final two paychecks.[30]  The city admitted it violated the FLSA minimum wage provision, which guarantees a statutory floor for pay, and suggested it should have collected any repayment as an "ordinary creditor."[31]  While there was an FLSA minimum wage problem, the Seventh Circuit found no problem with Wisconsin's law on covenants not to compete.[32]  The Seventh Circuit analogized the case to a permissible scenario where a company "could require the worker to pay for his own training but lend the worker the money and forgive repayment if he sticks around.  A worker who left before the loan had been forgiven would have to come up with the funds from his own sources[.]"[33]

In *Gordon v. City of Oakland*, the Ninth Circuit considered a suit from a police officer subject to a collective bargaining agreement that required pro rata repayment for their share of training costs of up to $8,000 for officers who voluntarily separated before five years of service.[34]  There, California police officers were required to have a certain certification to be eligible for employment.[35]  So Oakland allowed officers to get certified after being hired if they agreed to repay the training costs instead of only hiring individuals who had been certified.[36]  Gordon left the force about two years into her service, and the city paid her full final paycheck for her last two weeks of

---

[30] *Id.*

[31] *Id.* at 778–79.

[32] *Id.* at 781–82.

[33] *Id.* at 781.

[34] 627 F.3d 1092, 1093 (9th Cir. 2010).

[35] *Id.* at 1096 & n.5.

[36] *Id.* at 1096 & n.5.

work but withheld payment for accrued vacation and paid time off (around $3,000).[37] The city demanded the remaining $5,000 from Gordon, and she paid it and then sued, claiming a violation of the FLSA's minimum wage provision.[38]  The Ninth Circuit upheld the payment plan under the FLSA, holding that it was "repayment of a voluntarily accepted loan, not a kick-back" and that the city satisfied the FLSA minimum wage provision by paying Gordon "at least minimum wage for her final week of work"[39]  Accordingly, the Ninth Circuit said the city was "free to seek repayment of Gordon's training debt as an ordinary creditor."[40]

So the lessons from *Heder* and *Gordon* are that the FLSA minimum wage provision prohibits an employer from withholding the repayment from the employee's paycheck for training that gives a portable credential,[41] but an employer seeking repayment as an ordinary creditor for training that gives a portable credential presents no problem under the FLSA or state laws on covenants not to compete.

So how does the FLSA framework apply here?  Ameriflight seizes on Fredericks using the word "deduct" in her response brief—arguing that Fredericks paying Ameriflight back isn't a deduction from wages because she no longer works there. But the Court can't find where the FLSA and its regs limits kickbacks to deductions

---

[37] *Id*. at 1093–94.

[38] *Id*. at 1094.

[39] *Id*. 1096.

[40] *Id*. 1096.

[41] At least at one point in time, the Department of Labor might not agree with this holding. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2004 WL 3177896, at *1 (Oct. 8, 2004) ("where an employer makes a loan or an advance of wages to an employee, the principal may be deducted from the employee's earnings even if such deduction cuts into the minimum wage . . . due to the employee under the FLSA").

from paychecks.  Indeed, the example the regs give of an impermissible kickback is where an employee had to directly buy tools of the trade on his own, which could effectively drop his weekly pay below minimum wage.[42]  There is no employer deduction in that scenario where the employee buys the tools directly.  The Court cannot dismiss Fredericks's FLSA claims for failure to comply with a term not in the statute.

Instead, Fredericks's allegations appear to fit within the statute.  Fredericks alleged that the training program was primarily for Ameriflight's benefit to comply with Part 145 and that Fredericks could not take a training certification with her to a new job.  If true (and the Court must accept those well-pled allegations as true at this stage), then the training that primarily benefits Ameriflight is much like "tools of the trade" where a court must factor out costs that primarily benefit the employer.  Because Fredericks has alleged the training here conferred no portable benefit, it brings her case outside the scope of the portable benefits from training in *Heder* and *Gordon*, where there was no FLSA issue because of the portable credential.  The Court denies Ameriflight's motion to dismiss Fredericks FLSA claims.

## 2.  Covenant Not to Compete

Count III of Fredericks complaint argues that the training repayment limits pilot mobility and is an unlawful restraint of trade in violation of Texas law.  Ameriflight argues that the repayment agreement does not restrain trade because it did not prevent her from subsequent employment.

---

[42] 29 C.F.R. § 531.35.

Generally, "every contract, combination, or conspiracy in restraint of trade or commerce is unlawful" in Texas.[43]  The statutory exception provides that a

> covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill of the employee or other business interest of the promisee.[44]

If an agreement provides a severe economic penalty on a departing employee, courts use the noncompete reasonableness factors to assess whether the agreement is unlawful.[45]

Here, both sides point to competing cases as to why they think the repayment agreement is enforceable or not.  But here's the problem: it's difficult—if not impossible—to assess whether the repayment agreement meets the reasonableness test when there's no record at all.  That's a task the Court must undertake at summary judgment, not on the pleadings.

True, Ameriflight argues that the repayment agreement isn't a classic covenant not to compete and also can't violate that Texas law because it does not limit mobility (because the employee can still work anywhere else).  But that was true of the clause requiring repayment for the departing employ in *Rieves v. Buc-ee's Ltd.*, 532 S.W.3d 845, 851 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  Thankfully, the Thirteenth Amendment abolished involuntary servitude.  So the "limits mobility"

---

[43] Tex. Bus. & Com. Code § 15.05(a).

[44] *Id.* § 15.50(a).

[45] *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991).

inquiry is functional, not physical.  Still, the Court can't assess if the repayment agreement functionally and unreasonably limits mobility on the pleadings alone.

Accordingly, the Court denies Ameriflight's motion to dismiss the covenant not to compete claim.

### 3.  Penalty

Fredericks last cause of action is that the repayment plan is an unenforceable penalty under Texas law.  In addition to the jurisdictional argument Ameriflight made on this claim and the Court addressed above, Ameriflight also argues the repayment plan is neither a liquidated damages clause nor penalty clause under Texas law because it is simply a repayment agreement that is triggered if she leaves early.  Fredericks argues the plan recoups more than it charges and thus operates as a penalty.

The Court agrees with Fredericks.  Ameriflight's interpretation of the repayment as neither being liquidated damages nor a penalty would practically mean courts would never view penalty clauses as penalty clauses.  For example, phone companies used to say "leave us before 2 years and you owe $200."  These are classic penalty clause cases because leaving at the 1.9-year mark does not amount to the same loss to the phone company as leaving at the 0.1-year mark.  But under the Ameriflight view, that classic penalty clause isn't really a penalty clause because the customer is free to leave the phone company at any time (but just has to pay the specified amount).

Instead, the Court concludes that it's possible the repayment agreement could be a penalty clause if it was not a reasonable estimate in advance of what Ameriflight would lose with the pilot's early departure. But like with the non-compete analysis, reasonableness is not something the court can assess on the pleadings. Accordingly, the Court denies Ameriflight's motion to dismiss Frederick's penalty clause claim under Rule 12(b)(6).

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the motion to dismiss. (Doc. 66).

**IT IS SO ORDERED** this 19th day of March, 2024.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

14