UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHLEEN FREDERICKS, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:23-CV-1757-X |
| AMERIFLIGHT, LLC, | § § § | |
| *Defendant.* | § § | |

**MEMORANDUM OPINION AND ORDER ON LEAVE TO AMEND
AND CLASS CERTIFICATION**

Pilot Kathleen Fredericks agreed to work for Ameriflight, LLC (Ameriflight) and repay training costs if she left before a predetermined time. She left early, began making payments, and then brought two claims against Ameriflight under the Fair Labor Standards Act (FLSA) and two claims under state law.

Two motions are pending now. First, Ameriflight moves for leave to file an answer that asserts a counterclaim for fraudulent inducement. (Doc. 97). Second, Fredericks moves to certify a class. (Doc. 98). For the below reasons, the Court **GRANTS** the motion for Ameriflight to file an amended answer with a counterclaim. The Clerk is instructed to file Ameriflight's First Amended Answer to the docket as of the date of this order. (Doc. 97-1). The Court **GRANTS IN PART** the motion to certify a class and collective. The Court certifies for the penalty claim a class of Beechcraft 99 pilots who flew less than 12 months of revenue generating flying for

1

Ameriflight (or $10,000 for those who left after 12 months but before 18). And the Court certifies a collective for the FLSA claims for pilots with a repayment agreement who left employment with Ameriflight before the term of the repayment plan was complete. The Court otherwise denies the motion to certify.

## I. Factual Background

Ameriflight is a charter airline operator governed by 14 C.F.R. Part 135. Part 135 requires governed airlines to submit pilot training plans to the Federal Aviation Administration, and the training that pilots receive is not transferrable to another airline. From 2020 until 2022, Ameriflight required new pilots to reimburse Ameriflight between $15,000 and $30,000 if the pilot resigned or was terminated for cause within a certain time range of revenue flying for Ameriflight. Type-rated aircraft (like Embraer, the Beechcraft 1900, or Saab) would require more training and have a cost of $30,000. Lighter planes like the Beechcraft 99 needed less training and the training cost assigned was $20,000. And the time needed to fly for Ameriflight in a revenue generating capacity was either 1,200 hours or 12, 18, or 24 months.

Fredericks accepted an offer from Ameriflight in April 2021 and began working for it in May 2021. To accept Ameriflight's offer, Fredericks signed an employment agreement saying Ameriflight would train Fredericks on the Beechcraft 99, but that if she left before completing 12 months of revenue flying, Fredericks must repay Ameriflight $20,000 (or $10,000 if she left after 12 months but before 18). Fredericks prior job involved flying piston-driven aircraft, and she logged over 1,617 hours—with

2

1,512 as a pilot in command. Fredericks finished her training by July 2021, when her salary became $55,000. Fredericks resigned in November 2021, triggering the repayment clause.

Fredericks's suit brought claims for: (1) illegal kickbacks under the Fair Labor Standards Act (FLSA); (2) unpaid wages under the FLSA; (3) an unlawful contract in restraint of trade (the restraint claim); and (4) a declaration and injunction that the training repayment is an unenforceable penalty (the penalty claim).

After the Court denied Ameriflight's motion to dismiss, Ameriflight filed an answer. When Ameriflight deposed Fredericks, Ameriflight contends she testified that she entered into the employment agreement "without intending to honor her obligations thereunder."[1] Ameriflight moved for leave to amend and bring a counterclaim for fraudulent inducement.

On the heels of the motion for leave to amend is Fredericks's motion to certify a class for the restraint and penalty claims and a collective action for the two FLSA claims.

## II. Legal Standards

As to a motion for leave, Rule 15 states that a party may only amend pleadings before a pleading amendment deadline with the other party's consent or court leave, and that "[t]he court should freely give leave when justice so requires."[2]

---

[1] Doc. 97 at 2.
[2] FED. R. CIV. P. 15(a)(2).

As to certification, Fredericks has state law claims that could involve a class under Federal Rule 23 and FLSA claims with their own procedure for collective actions. Under Rule 23, Fredericks must satisfy numerosity, commonality, typicality, and adequacy under Rule 23(a).[3] And if so, a claim like Fredericks must establish "predominance" and "superiority" under Rule 23(b).[4] In addition, "the class sought to be represented must be adequately defined and clearly ascertainable."[5]

For FLSA collective actions, those who are "similarly situated" may proceed in a collective action to determine their rights under the Fair Labor Standards Act.[6]

> A showing that members of a collective action are similarly situated . . . requires plaintiffs to show a demonstrated similarity between the purported collective, such as a factual nexus that binds the claims together so that hearing all claims in one proceeding is fair to all parties and not beset with individual inquiries. This requires a consideration of proposed defenses to determine whether they are so individualized that denial of certification is required.[7]

Plaintiffs "bear the burden of proving a collective is similarly situated."[8]

### III. Analysis

#### A.  Leave to Amend Answer

Fredericks argues that Ameriflight should not be able to amend because: (1) the proposed fraudulent inducement counterclaim is futile (as the proposed pleading has no allegation she breached a duty to disclose her doubts about the

---

[3] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

[4] *Id.* at 345, 362 (discussing Fed. R. Civ. P. 23(b)(3)).

[5] *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).

[6] 29 U.S.C. § 216(b); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 433 (5th Cir. 2021).

[7] *Klick v. Cenikor Found.*, 94 F.4th 362, 372 (5th Cir. 2024).

[8] *Id.*

legality of the agreement); (2) the Fifth Circuit disallows contract or tort counterclaims in FLSA cases; and (3) the proposed counterclaim violates the FLSA's anti-retaliation provision. Ameriflight disagrees with all of that. The Court agrees with Ameriflight.

First, Fredericks argument that the proposed pleading fails to meet Rule 9's heightened pleading requirements because a statement in a deposition that Fredericks had her doubts about the enforceability of the agreement is not the same as intent to not comply. The Court believes this issue is better left to a motion to dismiss rather than futility briefing in a motion for leave.

Second, the Fifth Circuit indeed frowns upon contract and tort counterclaims in FLSA cases. But as Ameriflight counters, Fredericks put state matters at issue by bringing two state claims of her own. So, Ameriflight's argument goes, the Court needs to be consistent and either kick out all the state claims and let a state court resolve them or keep all the state claims for a global resolution. The Court agrees with Ameriflight that equity commands this Court take or leave the state court claims that arise from these facts but not take some and leave others. Ameriflight's fraud claim arises from the same transaction or occurrence as Fredericks's FLSA and state law claims. Accordingly, the claim is compulsory under Federal Rule of Civil Procedure 13(a)(1)(A). And the fraud claim is so related to Fredericks's claims that it forms part of the same case or controversy, warranting the exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

B. **Certification**

Certification of a class for the state law claims falls under Rule 23, and certification of a collective for FLSA claims must meet its own standard. The Court takes each in turn.

### 1. Rule 23 and the State Law Claims

Fredericks seeks to certify a class of 160 Ameriflight pilots subject to Ameriflight's training repayment program within the statute of limitations for two claims: (1) a declaration that the repayment plan is an unlawful covenant not to compete under the Texas Business and Commerce Code (the restraint claim); and (2) whether the repayment plan is an unlawful penalty at the common law (the penalty claim). Fredericks argues under Rule 23(a) that the class is sufficiently numerous, has common questions, the plaintiff's claims are typical, and the plaintiff is an adequate class representative. And she argues under Rule 23(b)(3) that common issues predominate and a class action is superior. Ameriflight counters that the restraint and penalty claims lack commonality, Fredericks is not typical, and a class is not superior. The Court takes the restraint claim and the penalty claim separately.

#### a. Rule 23 and the Restraint Claim

The Court concludes that the restraint claim flunks Rule 23(b)(3)'s requirement that common questions predominate.[9]

---

[9] As a result, the Court need not reach the remaining contested Rule 23(a) and (b)(3) factors for the restraint claim.

On common questions, Rule 23(a) requires that a plaintiff must demonstrate that the class claims "depend upon a common contention, . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[10]   And this requirement heightens under Rule 23(b)(3) to make the common questions predominate.

The common question is whether the training repayment program limitations as to time, area, and scope are unreasonable, such that it artificially restrains the mobility of labor.  Fredericks argues there will be a common resolution because the training was standardized and Ameriflight calculated the training cost across the class and not individually.  The Court disagrees.  The ultimate inquiry doesn't stop at whether there are reasonable restrictions.  It also assesses whether the restrictions functionally limit mobility of labor.  The 160 pilots in the putative class had different experiences coming into Ameriflight.  While at Ameriflight, they trained on planes of varying sizes.  Some, like Frederick, found work elsewhere before they completed their time with Ameriflight to avoid repaying training.  Some (18 by Ameriflight's count) remain employed at Ameriflight even after completing the duration of their agreements.  And another 23 have not yet completed the duration of their Agreements but remain at Ameriflight.

---

[10] *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)) (cleaned up).

Determining the benefit of the training to these different groups is not a one-size-fits-all endeavor. The real inquiry is what value the training provided them and the consequential impact on their mobility. As Fredericks herself admitted in her deposition, it would be "very difficult to quantify" the value each pilot received from the training and that talking to each pilot would be the way to ascertain that value. But the record Fredericks brings at this stage did not talk to each pilot.

The Court previously held at the motion to dismiss phase that such factual questions as these must be resolved at summary judgment.[11] True, we can pierce the pleadings and engage in a more factually intensive inquiry at the certification stage. But the problem is that Fredericks hasn't given a group-by-group analysis to go on at this stage (like pilots who trained on the Beechcraft 190 and agreed to repay $20,000 if they left before 12 months), despite her deposition statement that talking to each pilot is the way to find the value of the training to the pilot.[12] And because it is Fredericks's burden of proof, the Court concludes she has failed to carry her burden of showing common questions that predominate her restraint claim.

### b. Rule 23 and the Penalty Claim

The other claim Fredericks seeks class certification for is her penalty claim. This claim argues that the repayment cost for training was not a reasonable forecast of the actual cost of training and amounts to an unlawful penalty. Ameriflight argues

---

[11] Doc. 91 at 12 ("[I]t's difficult—if not impossible—to assess whether the repayment agreement meets the reasonableness test [for enforceability of covenants not to compete] when there's no record at all. That's a task the Court must undertake at summary judgment, not on the pleadings.").

[12] Ameriflight makes the point that even group-by-group analysis fails to really show the limit on mobility, as the resumes for the pilots show vastly different experiences. The Court need not reach this argument because at least group-by-group analysis is required, but Fredericks failed to do it.

8

that the same issues with commonality for the restraint claim apply to the penalty claim. The Court agrees with neither party.

### 1. Predominance

The Court agrees with Fredericks that the pilots who trained on the same aircraft as she did and signed a repayment agreement for the same terms (cost and duration) have common questions that predominate. The key question for this group is whether $20,000 was a reasonable estimate of the losses Ameriflight would incur from Beechcraft 99 pilots who flew less than 12 months of revenue generating flying for Ameriflight (or $10,000 for those who left after 12 months but before 18).[13]

The Court cannot agree with Fredericks that common questions predominate as to groups she was not in. Each aircraft has its own training regimen. And understandably, the different training programs resulted in different repayment amounts if a pilot left early. Each aircraft and repayment program would warrant its own trial. So common questions on the Beechcraft 99 with a $20,000 repayment for departure before 12 months do not predominate other aircrafts and repayment plans. Each pilot in that class might have had a different length of time of revenue generating flying for Ameriflight. But such differences are easy to calculate damages for on the back end if damages are warranted.

---

[13] The Court believes Fredricks's framing of the issue as one of a reasonable estimate of training cost is narrower than the true legal inquiry. In this situation, two factors are at play: the cost of the training and the profit Ameriflight gets from a pilot doing revenue generating flying. The Court must consider both in determining if the repayment plan was a penalty.

### 2. Typicality

On typicality, the "commonality and typicality requirements of Rule 23(a) tend to merge."[14] Because the Court concluded common questions predominate on the penalty claim for pilots on the Beechcraft 99 with a $20,000 repayment for departure before 12 months (and $10,000 for more than 12 months but less than 18), ordinarily the same holding would apply to typicality.

The problem is the counterclaim. When counterclaims are involved, "the key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendants' claims."[15]

Ameriflight argues that Fredericks is atypical in that she harbored deceit by knowing of the illegality of the repayment agreement but agreeing to it anyway (hence the counterclaim for fraudulent inducement). Fredericks responds that she won't spend considerable time rebutting the counterclaim for fraud because she already stated in her deposition that working for Ameriflight for 18 months was "the way it was looking like it was going to pan out" in light of the pandemic.[16]

The Court agrees with Fredericks. The defense Fredericks intends to mount is simple: she intended to abide by the agreement at the time she entered into it. Whether the jury will agree with her defense is a separate matter for another time. But that matter will not take considerable time and does not render Fredericks

---

[14] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

[15] *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007).

[16] Doc. 100 at 11 (cleaned up).

atypical of pilots on the Beechcraft 99 with a $20,000 repayment for departure before 12 months (and $10,000 for more than 12 months but less than 18).[17]

On balance, the contested Rule 23 factors warrant the Court certifying a class of pilots on the penalty claim who flew the Beechcraft 99 with a $20,000 repayment for departure before 12 months (and $10,000 for more than 12 months but less than 18).

### 3. Superiority

Next, the Court must assess whether a class action is superior or that "class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy."[18] The superiority analysis "requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case."[19] "The predominance of individual-specific issues . . . detracts from the superiority of the class action device in resolving these claims."[20] The "most compelling rationale for finding superiority in a class" has been said to be the "existence of a negative value suit."[21] But when a recovery could be substantial and

---

[17] Ameriflight makes no argument that Fredericks is an inadequate representative.

[18] *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

[19] *Allison v. Citgo Petro. Corp.*, 151 F.3d 402, 419 (5th Cir. 1998).

[20] *Id.*.

[21] *Id.* at 420.

attorney's fees may be recovered, the financial barriers to individual lawsuits fall away and make individual lawsuits superior.[22]

Ameriflight argues that Fredericks estimates over $26,000 in FLSA damages, and damages are inherently particularized and should be left to individual actions. Fredericks responds that FLSA damages are immaterial to her state law claims for restraint and a penalty.

The Court disagrees with both sides. First, Fredericks is right that the FLSA damages Fredericks seeks are no part of her state law claims. The Court does not see highly individualized damages calculations for whether the repayment agreement was a penalty for a class of pilots on the Beechcraft 99 with a $20,000 repayment for departure before 12 months (and $10,000 for more than 12 months but less than 18).

But Ameriflight is right that the ability to recover attorney's fees means that parties can bring individual cases. The Fifth Circuit has said as much.[23] But those cases had both significant damage recoveries and attorney's fee shifting laws working together.

---

[22] *Id.* ("The relatively substantial value of these claims (for the statutory maximum of $300,000 per plaintiff) and the availability of attorneys' fees eliminate financial barriers that might make individual lawsuits unlikely or infeasible." (cleaned up)).

[23] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) (holding that the expense of litigation does not make a class action superior because the "prevailing party may recover attorneys' fees under many consumer protection statutes"); *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 (5th Cir. 1975) (stating that the ability to recover attorneys' fees is one of the "oft-used bases for showing non-superiority").

Here, we have essentially a claim for injunctive relief[24] and an attorney's fee's shifting law.[25] The parties talk nothing of Fifth Circuit cases involving low to non-existent damages but having fee shifting statutes. The one the Court could find is a case Fredericks raised in her reply but to only address monetary recovery: *Bertulli v. Independent Association of Continental Pilots*.[26] There, the Fifth Circuit discussed that some class members could get about $29,000, the vast majority would get nominal damages and injunctive relief, and attorney's fees were recoverable.[27] The Court held:

> [A]ttorney's fees do not alter the relatively low damages most plaintiffs would receive nor the significance of injunctive relief to the entire class. . . . But the feasibility of individual actions does not undercut the conclusion that the class device is superior.[28]

Applying that rationale here, the ability to recover attorney's fees does not change the conclusion that a class is superior to individual claims. As such, the Court must conclude that a class is still superior for the penalty claim for pilots on the Beechcraft 99 with a $20,000 repayment for departure before 12 months (and $10,000 for more than 12 months but less than 18).

---

[24] As the Court sees it at this stage, a claim for a declaratory judgment that the repayment agreement is an unenforceable penalty seeks injunctive relief and not damages.

[25] Presumably here, the fee shifting law would be the Texas statute authorizing recovery of fees in declaratory judgment actions. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

[26] 242 F.3d 290 (5th Cir. 2001).

[27] *Id.* at 299.

[28] *Id.*

## 2. FLSA Collective

The crux of the FLSA collective action analysis is whether the proposed collective is similarly situated. Fredericks brings FLSA claims for a kickback and wages not being free and clear. On the kickback claim, Fredericks argues that the training was primarily for the benefit of Ameriflight, not the pilots, and the repayment program thus amounts to a kickback. And when the repayment was factored out of her final week of pay, her pay dropped below minimum wage, in violation of the FLSA. As to the free-and-clear claim, Fredericks argues the repayment plan violates the FLSA requirement that wages be "final and unconditional" or free and clear.

Fredericks contends this decision on whom the training primarily benefits can be made with class-wide proof. Ameriflight counters that that lack of common questions that predominate in the Rule 23 analysis means Fredericks is not similarly situated to the members of the proposed collective.

So who is similarly situated to Fredericks on the kickback and free-and-clear claims? Pilots like Fredericks with a repayment agreement who left employment with Ameriflight before the term of the repayment plan was complete. Common issues in such cases relate to whether the training primarily benefitted Ameriflight instead of the pilot and whether the obligation to repay the training brought the final week of pay below minimum wage. It may well be that some of these pilots had different salaries than Fredericks during their last week—such that the minimum wage math is different. But the FLSA does not require identical situations, just

14

similar situations. Accordingly, the Court certifies a collective for the FLSA claims for pilots with a repayment agreement who left employment with Ameriflight before the term of the repayment plan was complete.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion for Ameriflight to file an amended answer with a counterclaim and **GRANTS IN PART** the motion to certify a class and collective. The Court certifies for the penalty claim a class of Beechcraft 99 pilots who flew less than 12 months of revenue generating flying for Ameriflight (or $10,000 for those who left after 12 months but before 18). And the Court certifies a collective for the FLSA claims for pilots with a repayment agreement who left employment with Ameriflight before the term of the repayment plan was complete.

**IT IS SO ORDERED** this 25th day of November, 2024.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE