IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHLEEN FREDERICKS, | § | |
| | § | |
| Individually and on behalf of all others similarly situated, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 3:23-cv-01757-X |
| | § | |
| v. | § | |
| | § | |
| AMERIFLIGHT, LLC, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I.    **INTRODUCTION** ...........................................................................1

II.    **TERMS OF THE PROPOSED SETTLEMENT** ...................................2

    A.  Settlement Amount and Allocation.................................................2

    B.  Additional Relief............................................................................2

    C.  Proposed Notice Process................................................................3

    D.  Proposed Distribution of Funds .....................................................4

    E.  Release of Claims ..........................................................................5

III.  **LEGAL STANDARD** ........................................................................6

    A.  FLSA..............................................................................................6

    B.  Rule 23 ..........................................................................................7

IV.  **ARGUMENT** ....................................................................................8

    A.  The proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions. ..........................................8

    B.  As to the Rule 23 class, the proposed notice process is reasonable and complies with due process. ..........................................................10

    C.  As to the Rule 23 class, the proposed settlement is within the range of possible approval. ......................................................................11

    D.  The proposed service award is fair and reasonable. ....................12

    E.  The requested attorneys' fees and costs award is fair and reasonable, and supported by applicable precedent................................................14

V.    **CONCLUSION** ...............................................................................16

## I.      INTRODUCTION

Plaintiff Kathleen Fredericks ("Plaintiff") brought this lawsuit individually and on behalf of other pilots who worked for Defendant Ameriflight, LLC ("Ameriflight"), as she did, under a training repayment agreement. Plaintiff alleged in this lawsuit that Ameriflight's agreements and collections efforts violated various laws, including the Fair Labor Standards Act ("FLSA") and Texas common law.  On November 25, 2024, this Court granted conditional certification of an FLSA collective, pursuant to 29 U.S.C. § 216(b). The Court also certified a class, pursuant to Federal Rule of Civil Procedure 23, with unlawful penalty claims under Texas common law. *See* ECF No. 109. As a result of the notice that was issued to all eligible members of the FLSA collective, a total of 19 individuals opted in to the federal minimum wage claims and are presently represented by the undersigned counsel.[1] The Rule 23 class comprises 40 individuals, six of whom are also members of the FLSA collective.

As a result of a full-day mediation with John B. Shipp of Shipp ADR, on September 25, 2025, and subsequent negotiations, the parties finally reached a proposed settlement to resolve all claims in this case. The parties' Settlement Agreement with attached exhibits (Exhibits A – C), is attached as Exhibit 1.

The proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions for the 19 opt-in plaintiffs, and it is a fair, reasonable, and adequate settlement for the 40 Rule 23 class members, as discussed in detail below. In addition to affording each of them significant monetary and/or non-monetary recovery for the claims in this case, it will avoid the risks, uncertainties, costs, and delays inherent in further litigation. Accordingly, Plaintiff respectfully asks that the Court:

---

[1] An additional four opt-ins have been dismissed from the case because they failed to respond to discovery requests. *See* ECF No. 174.

1. Approve the notice procedure and authorize Plaintiff to issue notice to the collective and class in the forms attached to the parties' Settlement Agreement as Exhibits A - C;

2. Approve the distribution formula and payment procedure set forth in the parties' Settlement Agreement and this motion; and

3. Schedule a final fairness and approval hearing to take place on or around May 15, 2026, at which time Plaintiff will report to the Court the results of the notice process and explain why this settlement should be given final approval and the settlement fund distributed.

A proposed preliminary settlement approval order is attached as Exhibit 2.

## II.    TERMS OF THE PROPOSED SETTLEMENT

### A.    Settlement Amount and Allocation

The total amount of the settlement is $425,000 ("Settlement Fund"). This amount is non-reversionary, meaning that no part of the Settlement Fund will revert back to Ameriflight. The settlement contemplates allocation of the Settlement Fund as follows: attorneys' fees in an amount not to exceed $170,000; reasonable litigation costs incurred by class counsel, in an amount not to exceed $45,000; a service award of $10,000 for the named plaintiff, Kathleen Fredericks; costs of settlement administration in an amount not to exceed $10,000; and the remainder of the Settlement Fund ("Net Settlement Fund"), an amount no less than $190,000, to be distributed to the 19 opt-in plaintiffs and one member of the unlawful penalty class who made post-employment payments to Ameriflight.

### B.    Additional Relief

In addition to the monetary relief provided by the settlement, the settlement also entails substantial relief resulting from Ameriflight agreeing to forego collection of unpaid balances under the repayment agreements. Specifically, the training repayment agreements entered into by

the 19 opt-in plaintiffs and the unlawful penalty class members will be declared null and void. In addition, Ameriflight will release entitlement to and discontinue all collections efforts under the agreements, which amounts to approximately $852,128 in waived balances. Third, Ameriflight will decline to enforce the non-competition provisions of the contracts that certain class members signed.

### C.    Proposed Notice Process

The settlement contemplates that notice and an opportunity to object to the settlement shall be afforded to all members of the Rule 23 Class. To the extent that members of the Rule 23 Class are also opt-in plaintiffs, they will be issued the "hybrid" notice attached as Exhibit A to the settlement agreement. Otherwise, members of the Rule 23 class will be issued the notice attached as Exhibit B. Opt-in plaintiffs who are not also members of the Rule 23 class will be issued the FLSA-only notice attached as Exhibit C (and will not be provided an opportunity to object to the settlement).

A settlement website will be established using the URL https://www.traplawsuit.com, or something similar, which will provide access to each version of the settlement notice, important Court documents, contact information for the settlement administrator and Class Counsel, a form to provide updated contact information, and a form to indicate preference for payment method (check, Venmo, PayPal, Zelle), as well as other information deemed necessary.

The proposed notice plan is for the settlement administrator to send the notices by first-class mail to the last known address of all opt-in plaintiffs and members of the Rule 23 class. The settlement administrator will also issue a brief notice by text and email (to the extent that telephone numbers and email addresses are available), containing a link to the settlement website. For individuals for whom the mailed notice is undeliverable, the settlement

3

administrator will use all reasonable efforts to locate updated addresses and will promptly mail the notice packets by first-class mail to the updated address.

### D.    Proposed Distribution of Funds

The settlement contemplates Ameriflight making payment in installments. Within 35 days after an order from the Court granting final approval of the settlement, Ameriflight will deposit $125,000 into the Qualified Settlement Fund established by the settlement administrator. Subsequent to this initial deposit, Ameriflight will deposit a total of $300,000 into the Qualified Settlement Fund via monthly installments. Ameriflight will make a total of twelve (12) monthly deposits into the Qualified Settlement Fund of $25,000 each, with the first monthly payment due 30 days after the initial deposit.

Payments to opt-in plaintiffs and unlawful penalty class members, representing full reimbursement of post-employment training repayments, will issue within 30 days after the settlement effective date. Payment will be made based on preference indicated during the notice process (check, Venmo, PayPal, Zelle). If no preference is indicated, or if adequate information is not provided to implement that preference, payment will be made by check, which will expire within 120 days of issuance.

Within 120 days after the settlement effective date (after Ameriflight makes the third monthly installment payment of $25,000), the payment will issue to the opt-in plaintiffs, representing compensation to them for their free-and-clear minimum wage liquidated damages.

Within 150 days after the settlement effective date (after Ameriflight makes the fourth monthly installment payment of $25,000) the payment will issue to the settlement administrator for the Court-approved amount of settlement administration costs.

Within 180 days after the settlement effective date (after Ameriflight makes the fifth monthly installment payment of $25,000), payment representing reimbursement of litigation costs will issue, in the amount approved by the Court.

Within 360 days after the settlement effective date (after Ameriflight has completed all monthly installment payments), payment representing attorneys' fees will issue in the amount approved by the Court.

If any settlement checks are returned as undeliverable, the settlement administrator will promptly attempt to locate the person (including using the Social Security Number of that individual and any other identifying information and/or by contacting the person via email or telephone). Upon request, the settlement administrator will promptly reissue checks that were mailed but not cashed during the 90-day time period to deposit/cash checks from the settlement. Any settlement check that remains undeliverable or is not cashed after all checks have expired shall be cancelled and voided, and remaining monies (after any applicable cancellation or void fees) shall be distributed on a *cy pres* basis to NYU Wagner Labor Initiative without further order of the Court.

### E.    Release of Claims

The settlement agreement calls for a narrowly-defined release of claims, with the sole exception of the named plaintiff, who will sign a general release of claims in exchange for receiving the service award. The 19 opt-in plaintiffs will release Ameriflight "of and from all known and unknown claims for an unlawful kickback and/or failure to pay wages free and clear under the Fair Labor Standards Act, and any other claims that were asserted or that could have been asserted under state or federal wage and hour laws based on the facts alleged in the operative complaint." The 40 unlawful penalty class members will release Ameriflight "of and

5

from the unenforceable penalty claim that was asserted or could have been asserted based on the facts alleged in the operative complaint."

## III.    LEGAL STANDARD

### A.    FLSA

"When parties request judicial review and approval of a settlement agreement in the dismissal of the underlying FLSA action, the court must be satisfied that the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Garcia v. Overnight Cleanse, LLC*, No. 3:18-CV-3386-S-BH, 2021 WL 842128, at *3 (N.D. Tex. Mar. 5, 2021), *quoting Alaniz v. Maxum Petroleum Operating Co., Inc.*, No. SA-15-CV-00373-XR, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31, 2016), *citing Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin.*, Wage & Hour Div., 679 F.2d 1350, 1355 (11th Cir. 1982).

The court's review is "focuse[d] on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *2 (N.D. Tex. Nov. 12, 2014), *report and recommendation adopted in part*, No. 3:11-CV-2743-O, 2014 WL 7336889 (N.D. Tex. Dec. 24, 2014), *quoting Sims v. Hous. Auth. City of El Paso*, EP–10–CV–109–PRM, 2012 WL 10862119, at *2 (W.D. Tex. Feb. 29, 2012). "In essence, the [c]ourt must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear [Fair Labor Standards Act] requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Plunkett v. FirstKey Homes LLC*, No. 3:23-CV-2684-L-BN, 2024 WL 5315330, at *2 (N.D. Tex. Nov. 21, 2024), *report and recommendation adopted sub nom. Plunkett v. First Key Homes LLC*, No. 3:23-CV-2684-L-BN, 2024 WL 5075065 (N.D. Tex. Dec. 11, 2024), *quoting Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *5 (N.D. Tex. July 1, 2015).

Because members of an FLSA collective have affirmatively consented to join the lawsuit, the focus is not on due process concerns, as it is in the Rule 23 context. *Id.*

### B.    Rule 23

The Federal Rules of Civil Procedure require that the settlement of a class action that binds absent class members be subject to approval by the court. *See* Fed. R. Civ. P. 23(e). "Approval of a class action settlement entails a three-step process." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, No. 6:03-CV-126, 2005 WL 1875545, at *3 (E.D. Tex. June 30, 2005). First, the court makes a preliminary fairness assessment. *Id.* Second, the court reviews and approves the proposed plan for notice. *Id.* Third, the court must hold a hearing and, only after the hearing, find that the settlement is "fair, reasonable, and adequate." *Id.;* Fed. R. Civ. P. 23(e).

In making this final fairness determination, the court will ultimately consider whether: (A) the class was adequately represented; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to each other." *Id.* The adequacy of the relief must "tak[e] into account": (1) "the costs, risks, and delay of trial and appeal"; (2) the "effectiveness" of the proposed distribution of relief to the class; (3) "the terms of any proposed award of attorney's fees, including timing of payment"; and (4) disclosure of the existence of any related agreements. *Id.*

At the preliminary approval stage, "the standards are not as stringent as those applied to a motion for final approval." *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314-15; *see also McNamara v. Bre-X Mins. Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002).

7

IV.    **ARGUMENT**

A.    **The proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions.**

There can be no question that the FLSA claims at issue in this litigation are subject to a bona fide dispute. As this Court recognized in its memorandum and order denying Ameriflight's motion to dismiss, Plaintiff's FLSA kickback claim turns on whether Ameriflight's training program "was primarily for Ameriflight's benefit to comply with Part 1[3]5 and that Fredericks could not take a training certification with her to a new job." ECF No. 91 at 11. Plaintiff's position in this litigation has always been that the training was primarily for Ameriflight's benefit, and, as this Court recognized in its conditional certification decision, "the repayment program thus amounts to a kickback," which "brought the final week of pay below minimum wage." ECF No. 109 at 14. Ameriflight has consistently taken the opposite position: that the training was primarily for the pilots' benefit. The evidence concerning this dispute was developed during discovery, and both parties were prepared to litigate the primary benefit issue at summary judgment and at trial.

With respect to Plaintiff's free-and-clear minimum wage claim, this Court rejected Plaintiff's theory that pilots who worked the full term of their repayment agreements were similarly situated to those who left and became subject to Ameriflight's attempts to enforce the repayment obligation. This demonstrates a genuine dispute over the interpretation and application of 29 C.F.R. § 531.35.  (Moreover, if Ameriflight were to file a decertification motion, there would be a very real risk that the collective could be decertified, further demonstrating the disputed nature of the FLSA claims.)

The fairness and the reasonableness of the settlement agreement, in light of this bona fide dispute, is best demonstrated by the fact that the 11 opt-in plaintiffs who made post-employment

8

payments to Ameriflight will receive the full amount of those payments. These amounts range from $1,350 to $25,000. In addition, all 19 opt-in plaintiffs will receive a settlement payment representing their *pro rata* share of the liquidated damages that Plaintiff would have sought for them under the free-and-clear minimum wage theory, calculated by taking opt-in plaintiffs' total regular hours times $7.25 (the federal minimum wage). These payments to opt-in plaintiffs range from $1,150 for an opt-in who worked 496 regular hours to $9,958 for an opt-in who worked 4,295 hours. This resolution recognizes that, even if Plaintiff had succeeded on her free-and-clear theory, advanced on behalf of the collective, Ameriflight may have been able to obtain a "credit" for its actual wage payments, which would have cut in half the double damages Plaintiff would have been awarded. *Cf. Biggs v. Wilson*, 1 F.3d 1537, 1544 (9th Cir. 1993) (late payment of wages triggers liquidated damages provision of FLSA); *Atl. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944) (same).[2]

Moreover, by distributing a portion of the damages to the opt-in plaintiffs based on their total regular hours (times the minimum wage), Plaintiff recognizes that those who worked for Ameriflight for longer periods of time while receiving wages that were not "paid finally and unconditionally," 29 C.F.R. § 531.35, were subject to greater harm under this theory, because they were restricted in their ability to freely use their wages for a longer period of time. In a sense, this manner of distributing damages recognizes the opportunity costs to the opt-in plaintiffs for working under contract, since those who left Ameriflight after working for shorter

---

[2] "[I]f an employer on any regular payment date fails to pay the full amount of the minimum wages and overtime compensation due an employee, there immediately arises an obligation upon the employer to pay the employee the difference between the wages paid and the wages due, plus an equal additional amount as liquidated damages; and the payment thereafter of the balance due as wages, even though made prior to suit, does not release the accrued liability for liquidated damages. Such damages are not inflicted as a penalty, but are allowed as compensation for detention of a workman's pay." *Atl. Co.* 146 F.2d at 482.

periods of time were free to find work that did not impose conditions on their receipt of the federally-mandated minimum wage.

This bifurcated manner of distributing damages to the opt-in plaintiffs is a fair and reasonable approach to compensating the opt-in plaintiffs for FLSA damages under both legal theories asserted in the case, for which Plaintiff seeks approval in the attached proposed preliminary approval order.

**B.    As to the Rule 23 class, the proposed notice process is reasonable and complies with due process.**

The proposed notice process, which mirrors that previously approved by the Court after certifying the FLSA collective and the Rule 23 class, *see* ECF No. 119, satisfies Rule 23(e)'s requirement that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal."

The proposed notices (one to Rule 23-only class members and one to those who are also opt-in plaintiffs) provide accurate information about the absent class member's settlement share, other relief afforded by the settlement agreement, the release of claims, and the opportunity to object to the settlement. The notice has been intentionally designed to be accessible to non-lawyers, using a template developed by the Impact Fund's Notice Project. More information is available at https://noticeproject.org.

A settlement website will be available to all class members, which will contain all relevant information about the agreement, including the total amount of the settlement, the attorneys' fees sought, and the service award requested.

Rule 23(e)(4) further provides the Court with discretion to determine whether "a new opportunity to request exclusion" must be provided to "individual class members who had an earlier opportunity to request exclusion but did not do so." Here, the notice proposed by Plaintiff

10

does <u>not</u> provide a new opportunity to request exclusion. The parties' rationale for not providing this new opportunity is as follows: (1) the previous notice process, which did provide for exclusion, was robust and took place only one year ago; (2) the release of claims that will bind class members is narrowly-tailored to the unlawful penalty claim brought in this lawsuit; (3) absent class members' claims have not been "compromised," since Plaintiff achieved the best-case scenario for the class; (4) of the Rule 23 class members who made post-employment repayments to Ameriflight, only one is not also an opt-in plaintiff, which means that the remaining 33 class members are more similar to a Rule 23(b)(2) class, for whom there need be no opportunity for exclusion; and (5) by keeping the notice simple, absent class members are more likely to make sense of the information provided.

     **C.**     **As to the Rule 23 class, the proposed settlement is within the range of possible approval.**

As this Court recognized in its class certification decision, Plaintiff's unlawful penalty claim is "essentially a claim for injunctive relief and an attorney's fee's shifting law." ECF No. 109.  Plaintiff has achieved, through this settlement agreement, the full range of relief that she sought for the Rule 23 class.  First, Ameriflight has agreed to return any amounts actually paid to Ameriflight, post-employment, by members of the Rule 23 class. This includes 6 opt-in plaintiffs who are also members of the Rule 23 class, and one class member who did not opt in to the FLSA collective, who will recover the $17,500 that he paid to Ameriflight post-employment.

Second, as to all 40 members of the Rule 23 class, Ameriflight has agreed to declare the training repayment agreements null and void, and to forego seeking collections on any amounts owed under these agreements. This represents a best-case scenario for Plaintiff as to the unlawful penalty claim. The total value to the class, excluding the amounts being repaid, is $710,188,

which Plaintiff calculated by summing each class member's balance owed at termination, minus any payments made post-employment.

In light of this best-case scenario outcome, as to a claim that Plaintiff was not certain to prevail upon at trial, there are no "obvious deficiencies." *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. at 314. Any concerns that the Court might have about preferential treatment for the named plaintiff or an excessive attorneys' fee award are moot. There are no "side agreements" that must be reported to the Court. There is no evidence of collusion; indeed, the final settlement terms were vigorously contested, not just at the mediation, but in the finalizing of the settlement, as evidenced by the length of time that it took the parties to execute a final settlement agreement.

### D.    The proposed service award is fair and reasonable.

Plaintiff seeks a modest service award for the named plaintiff, Kathleen Fredericks, in the amount of $10,000. This amount represents compensation for (1) her reputational risk in bringing a high-profile lawsuit in the aviation industry, given her chosen profession as a pilot; (2) her initiative in seeking out attorneys to challenge what she perceived to be an unfair, anti-competitive, and coercive practice; and (3) her significant dedication of time to the case.

Service awards, which are often referred to as incentive payments, recognize the risk taken by named plaintiffs in putting their name on a public lawsuit. "Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny"; service awards recognize and compensate plaintiffs for playing this role. *Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995, at *2 (N.D. Ill. May 1, 2017). Service awards serve a particularly important role in employment class actions, "because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers." *Id.*

12

Fredericks was willing to put her name on this lawsuit, despite the substantial risk to her reputation, because she recognized that if she did not act, it would be unlikely that anyone else would. As she testified at her deposition, "the entire industry is built upon pilots clamoring over each other, particularly at these lower levels, you know, what I'll call it entry-level airlines. So it's not uncommon to say, 'Well, I don't really think this is fair, but I have to keep scrambling. I have to stay on the hamster wheel and keep running.'" Fredericks Dep. 39:3-10.

In addition to the risk she incurred, Fredericks devoted substantial time and attention to this case, to ensure that it would have the maximal benefit to other pilots at Ameriflight and in the industry more generally. In addition to seeking out attorneys to represent her, providing them with documents and connecting them with witnesses, she responded to written discovery, sat for an in-person deposition, and participated actively in an all-day mediation to resolve the case. Both the deposition and the mediation required her to take time away from home and work to travel to Dallas. Lastly, to raise awareness about the issues in the lawsuit, Fredericks spoke to reporters, and allowed herself to be photographed for pieces that appeared in multiple outlets, including the Huffington Post.

Plaintiff recognizes that the requested service award is approximately 2.5% of the common fund, which is greater than the 1% figure referenced by the Northern District of Texas in recent FLSA settlement approval decisions. *See, e.g., Herbert v. LTC Delivery LLC*, No. 3:19-CV-01856-X, 2022 WL 1608639, at *3 (N.D. Tex. May 20, 2022); *Lee*, 2015 WL 13729679, at *1. This 1% benchmark has never been adopted by the Fifth Circuit, however, and it serves as a benchmark, not a hard and fast requirement for approval.

Although Plaintiff acknowledges that "the size of the common fund is a reflection of the degree to which the class has benefitted from the service of the representatives," *Lee*, 2015 WL

13

13729679, at *8, that is not the only measure of class benefit. Here, the FLSA opt-ins and Rule 23 class members will all recover the full amount that Ameriflight recovered from them through post-employment collections, and will no longer be subject to future collections actions, returning them to the *status quo ante*. These non-monetary benefits have a value of $852,128 (including the FLSA opt-ins who are not Rule 23 class members), a significant amount, which should be considered in the context of evaluating "the degree to which the class benefitted from [Fredericks'] actions." *Id.* at *4, *quoting In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012).

Moreover, because this is a hybrid FLSA / Rule 23 action, the unlawful penalty class members will have an opportunity to object to the service award. The Court will be able to consider any objections at the time it holds the final fairness hearing.

### E.  The requested attorneys' fees and costs award is fair and reasonable, and supported by applicable precedent.

The settlement agreement calls for attorneys' fees in the amount of $170,000, and costs in an amount not to exceed $45,000. Although Plaintiff intends to submit a more detailed fee petition two weeks before the end of the objection period, so the Court can make a final determination about the fairness and reasonableness of this request in light of the factors laid out in *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), Plaintiff is able to represent to the Court now that Plaintiff's attorneys' lodestar fees exceed $170,000, and that the amount of costs requested will be the amount actually incurred. In other words, this request is far from a windfall for Plaintiff's attorneys. Plaintiff can also represent to the Court that this case was taken on a contingency fee basis, meaning that Plaintiff's attorneys invested significant time and resources into this case despite the risk of no recovery.

14

The amount of fees requested represents 40% of the common fund. This is well within the range that has been approved by federal courts in common fund cases resulting in a substantial recovery for the collective/class. *See, e.g.*, *Plunkett v. FirstKey Homes LLC*, No. 3:23-CV-2684-L-BN, 2024 WL 5315330, at *10 (N.D. Tex. Nov. 21, 2024) (awarding 40% of common fund to attorneys in FLSA case), *report and recommendation adopted sub nom. Plunkett v. First Key Homes LLC*, No. 3:23-CV-2684-L-BN, 2024 WL 5075065 (N.D. Tex. Dec. 11, 2024); *Vassallo v. Goodman Networks, Inc.*, No. 15CV97-LG-CMC, 2016 WL 6037847, at *4 (E.D. Tex. Oct. 14, 2016) (awarding fees representing 39.78 percent of the common fund in FLSA case); *Lackey v. SDT Waste & Debris Servs., LLC*, No. CIV.A. 11-1087, 2014 WL 4809535, at *3 (E.D. La. Sept. 26, 2014) (awarding fees representing 40 percent of the common fund in FLSA case).

As with service awards, there is also precedent for taking into account the value of "debt forgiveness" when determining the common fund percentage. *See, e.g.*, *Melby v. Am.'s MHT, Inc.*, No. 3:17-CV-155-M, 2018 WL 10399003, at *4 (N.D. Tex. July 5, 2018); *Cosgrove v. Citizens Auto. Fin., Inc.*, No. CIV.A. 09-1095, 2011 WL 3740809, at *8 (E.D. Pa. Aug. 25, 2011) (approving attorney's fee award of $1.25 million where defendant paid $2.9 million into settlement fund and debt relief was valued at $7.75 million, resulting in an award of "approximately 11.7% of the settlement fund, including debt relief").

Taking into account Ameriflight's agreement to forego collections on any balances owed by the collective/class, the total value of the settlement is approximately $1.28 million. The fees requested represent only 13.3 % of that value.

When the Court holds the final fairness hearing in this matter, after the objection period closes and Plaintiff has filed her petition for attorneys' fees and costs, it will have all of the

15

information necessary to evaluate the *Johnson* factors, to the extent that they are applicable. *Plunkett*, 2024 WL 5315330, at *8. Those factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases." Plaintiff is confident that these factors will support the requested fee amount.

## V.    CONCLUSION

For all of these reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the settlement, approve the distribution formula, and authorize Plaintiff to send the proposed notice of settlement to the settlement class.  Specifically, Plaintiff requests that the Court issue a preliminary approval order in the form attached to this motion as Exhibit 2.

Date: January 30, 2026

Respectfully submitted,
*/s/ Rachel Smit*

Rachel Smit*
rachel@fairworklaw.com
FAIR WORK, P.C.
192 South St. Suite 450
Boston, MA 02111, USA
Tel: (617) 841-8188

Ashley Tremain (State Bar No. 24066209)
ashley@tremainartaza.com
TREMAIN ARTAZA PLLC
4925 Greenville Ave Ste. 200
Dallas, TX 75206
Tel: (469) 573-0229

Rachel Williams Dempsey*
rachel@towardsjustice.org
David Seligman*
david@towardsjustice.org
TOWARDS JUSTICE
PO Box 371680, PMB 44465
Denver, CO 80237-5680
Tel: (720) 441-2236

Persis Yu*
persis@protectborrowers.org
STUDENT BORROWER PROTECTION
CENTER (a fiscally sponsored project of
Shared Ascent Fund)
1025 Connecticut Ave NW, #717
Washington, DC 20036
Tel: (202) 670-3871

*Attorneys for Plaintiff and the Putative Class
and Collective*

*Admitted pro hac vice*

17

## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiff conferred with Defendant about the relief requested herein, and Defendant indicated that it would not oppose the request.

Date: January 30, 2026

*/s/ Rachel Smit*
Rachel Smit

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel(s) of record.

Date: January 30, 2026

*/s/ Rachel Smit*
Rachel Smit